HERGET, Judge.
From a judgment signed April 24, 1962 in favor of plaintiff, Hules (Hulis) Rudison, and against defendants, Michigan Millers Mutual Insurance Company of Lansing, Michigan and Liverpool & London & Globe Insurance Company, Limited, jointly, individually and in solido, in the sum of $2,294.-72, and against Liverpool & London & Globe Insurance Company, Limited in the sum of $1,250 together with costs of court and rejecting Plaintiff’s demands for penalties and attorney fees, Defendants ap *409 pealed suspensively and, in the alternative, devolutively to this Court insofar as the judgment was applicable adversely to each of them. Plaintiff answered the appeals praying for an increase in the judgment against Liverpool & London & Globe Insurance Company, Limited to $3,500 and the judgment against both Defendants be .amended to include an award of penalties .and attorney fees.
Rudison instituted this action to recover the proceeds of fire insurance polices issued by Defendants insuring his residence and household contents in Amite, Louisiana damaged by fire on April 4, 1959. Both Defendants filed exceptions of no cause or no right of action and pleas of prescription. These were overruled. Each Defendant answered Plaintiff’s suit denying liability on the respective policies issued by it on the averment Plaintiff either set fire to the insured dwelling or had said dwelling set fire by a person or persons unknown to Defendants and, further, that Plaintiff committed a breach of the policy contracts in falsely swearing in the notarized proofs of loss submitted to Defendants by Plaintiff on his alleged claims.
The fire at Plaintiff’s residence was detected by a neighbor at 5 a. m. on the morning of April 4, 1959. Immediately upon ■such discovery the fire department was notified and firemen with equipment hurriedly arrived at the scene of the fire, entered the premises through a burned hole in one of the walls and were successful in extinguishing the fire, there being blazes in several rooms. An investigation was made by the firemen and Fire Marshal and it was conclusively shown the origin of the fire was an ignition of diesel fuel soaked rags scattered throughout the building. Pictures were taken depicting the presence of the oil soaked rags and damages to the interior of the house resulting from the fire. These pictures were offered in evidence by the Defendants. In addition, a picture was offered depicting the presence of diesel fuel on grass on the east side of the northeast bedroom on the exterior of the house. From the testimony of the firemen and the Fire Marshal and from our observation of the pictures, it is inescapable the origin of the fire was of an incendiary nature.
The house and contents would have been destroyed except for the fact each door was locked, all the windows were closed and all except two had been nailed shut, thus preventing a sufficient supply of oxygen to feed the flames.
Plaintiff testified he was employed as a mechanic in a sawmill and tracking business operated by Herbert Freiler. In describing his activities leading up to this incident he said he worked a full day at the mill leaving at 5:30 p. m. the day preceding the discovery of the fire; going then to visit his estranged wife at the home of her mother where he remained until 10:30 p. m.; he then repaired to his home, took a bath and thereafter left his home and returned to the mill and spent about an hour and a half at a cafe located on the premises of the mill; he left the cafe at 1 a. m. and began work on a power mower in the mill garage and worked continuously thereon until daybreak, at which time he was informed his house was ablaze. Plaintiff further testified upon leaving his home following his taking a bath the night preceding the discovery of the fire he had locked the building securely, and all of the windows with the exception of two were nailed shut. Plaintiff denied he himself had set fire to his residence and further denied he had procured the services of an incendiarist. Plaintiff was questioned concerning the fire, particularly the origin thereof, however no criminal charges were preferred against him.
The evidence further shows Plaintiff, and his wife were separated; that shortly before the fire he attempted to borrow $1,000 from Ponchatoula Homestead Association, it was already a mortgage holder on the property and the application for an additional loan was turned down. He was ■ successful in obtaining a loan from his employer; however, the testimony does not *410 establish whether such money was procured before or after the fire.
The house was built in 1956, at which time it was insured for $2,500. Subsequently Plaintiff purchased a policy insuring the house for $3,000 from Michigan Millers Mutual Insurance Company. Through another agent, the McClendon and Parenotte Insurance Agency, Plaintiff obtained a policy from Liverpool & London & Globe Insurance Company, Limited insuring the house for an additional $5,000 and the household effects for $2,500. A month prior to the fire he increased the insurance coverage on the household effects which he had with Liverpool & London & Globe from $2,500 to $3,500, and on the house itself from $5,000 to $6,000. Neither of the insurance companies nor their agents were apprised of the increased coverage of the other by Plaintiff prior to the fire. From the valuations of the house and its contents offered in the trial of the case, it is obvious the insurance obtained by Plaintiff was in excess of the value thereof and as Plaintiff testified he was the sole owner of the house, no one but he would profit by the loss of the building and its contents. Plaintiff testified he had no enemies and he was the only person who had access to the premises. On the trial of the case, the Trial Judge observed it would take judicial notice of the fact everybody had enemies.
To sustain the defense of incen-diarism or arson, the burden rests on Defendants to prove this assertion by a preponderance of the evidence — unlike in criminal actions wherein the State is called upon to prove the guilt of the arsonist beyond a reasonable doubt. In resolving the question, it is obvious that in all instances, except in most unusual instances, the evidence relied upon to sustain the plea is circumstantial, as the perpetrator of such act does not indulge in such activity openly for notoriety, and in the presence of witnesses, but stealthily and surreptitiously. Thus, in the absence of direct evidence, the Court is called upon to resolve the issue dependent upon its conclusion from the circumstantial evidence. Of necessity, such determination must be made in each individual case, giving consideration to the evidence as to the origin of the fire and the motives of those who may conceivably resort to such nefarious acts. Upon proof of the incendiary nature of the fire and Plaintiff’s motive and capability to set the fire, a presumption is established in favor of Defendants the fire was in fact set by Plaintiff or at his procurement requiring convincing evidence on his part he was not to blame.
In Sumrall v. Providence Washington Ins. Co., 221 La. 633, 60 So.2d 68, the Supreme Court with Justice McCaleb as the organ of the Court observed:
“Inasmuch as the defense is arson, the burden rested upon the insurer to establish, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. It is well settled that the insurer need not prove its case against a plaintiff beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense. Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire. Adams v. Liverpool & London & Globe Insurance Co., 5 Orleans App. 301; St. Philip v. Lumbermen’s Ins. Co. of Philadelphia, 18 La.App. 331, 137 So. 359; Wilson v. Aetna Ins. Co., La.App., 161 So. 650; Parker v. Hartford Fire Ins. Co. of Hartford, Conn., La.App., 163 So. 435; Picoraro v. Insurance Co., 175 La. 416, 143 So. 360; DiMartino v. Continental Ins. Co. of New York, 187 La. 855, 175 So. 598 and Pizzolato v. Liverpool & London & Globe Ins. Co., 207 La. 101, 20 So.2d 551. Accordingly, *411 the questions presented in matters of this sort are answered by the particular facts of the controversy.”
In Picoraro v. Insurance Co. of State of Pennsylvania, 175 La. 416, 143 So. 360, Chief Justice O’Niell as the organ of the Court observed:
“The only question therefore is whether the setting fire to the house was done with or without the knowledge and consent of the insured. Although the circumstantial evidence against him is strong, it would be perhaps not sufficient in a prosecution for the crime of arson to convince a jury beyond a reasonable doubt. Proof beyond a reasonable doubt, however, is not necessary to sustain a charge of arson made in defense of a civil suit on a fire insurance policy. A preponderance of the evidence in such a case is sufficient. The reason is that there is no life or liberty at stake, and the ■court cannot indulge in undue lenience towards either party without doing injustice to the other. In such a case the court is compelled to decide whether the defense is sustained by a preponderance of the evidence. Wightman v. Western Marine & Fire Insurance Co., 8 Rob. 442; Hoffman v. Western Marine & Fire Insurance Co., 1 La. Ann. 216; Exnicios v. Sun Insurance Office, 156 La. 975, 101 So. 383.”
In Parker v. Hartford Fire Ins. Co. of Hartford, Conn., La.App., 163 So. 435, the Court of Appeal of Louisiana, Orleans, in concluding plaintiffs therein were guilty of incendiarism precluding recovery on a policy of fire insurance, observed:
“It is not necessary for us to determine, and we do not undertake to do so, whether or not plaintiffs set or caused to be set the fire which destroyed their home. This is a civil action and to it a special defense was made. The jurisprudence herein cited clearly shows that, to maintain that defense, as in all other civil actions, a preponderance of evidence is necessary. Beyond any question of a doubt, the fire was preceded by an explosion, and it is likewise certain that such a set-up was found on the premises as to convince any fair mind that the explosion and fire were of an incendiary origin. There is a total absence of evidence even tending to show a motive or incentive in any third person or persons. Under these circumstances, the inference or presumption necessary to maintain the defense is, we believe, sufficiently established, and the following language of this court in St. Philip v. Lumbermen’s Ins. Co. of Philadelphia, supra [18 La.App. 31,137 So. 359], we believe to be particularly applicable: ‘Of course, it is possible that he was the victim of circumstances, and, however unlikely it may seem, some one unknown to him, acting independently and for some purpose of his own, may have started the fire. If such be the case, a grave injustice will have been done plaintiff, in his personal and property rights, and his good name will have been tarnished by the stigma of undeserved pollution. We have no doubt that instances have occurred in the past and will recur in the future, wherein the reliance upon circumstantial evidence has resulted in even greater and more grievous error. All judicial systems, being human, are imperfect, and their operation must inevitably result in certain vicarious sacrifices. All a court of justice can do is to hew to the line of correct judicial procedure and let the chips fall where they may.’ ”
Counsel for Plaintiff maintains Plaintiff has successfully rebutted the presumption arising from the proof of the incendiary origin of the fire by the denial of Plaintiff of such act and the assertion because of the Trial Judge’s observation of judicially taking notice everyone has enemies it is reasonable to presume someone else other than Plaintiff ignited the premises. He *412 even suggests some unknown enemy could have entered the house through the attic, crashed through the ceiling of a closet, distributed his oil soaked rags through the premises, ignited same and exited therefrom in the same manner. Such operation, of necessity, would require the phantom arsonist to lift a quantity of fuel oil through this inaccessible opening together with his supply of rags, perform his mission and then make his escape through the tramon-tane opening in the ceiling. We do not categorize such action as reasonably credulous.
In support of his argument counsel cited Barbari v. Firemen’s Insurance Company, La.App., 107 So.2d 480, and particularly the observation by the Court at page 486:
“We held in the case at bar that there is no preponderance of evidence against plaintiffs, but going further or stating differently, we do not find the circumstantial evidence is such as to preclude every other reasonable hypothesis. The record discloses possibilities: For instance, low voltage burned out appliance motors; defective wiring could have originated the fire; the thieves who broke in the machines prior to the fire could have accidentally set it. Besides that there could have been other causes by loiterers or enemies.”
We observe in the Barbari case the Court found as a fact the fire which destroyed the premises was not of incendiary origin and the Court further found though a motive on the part of the insured to have caused the fire may be probable, from the evidence they were not convinced of such fact.
From the evidence offered in this case, while conceivably another might have started the fire and though the mere suspicion of guilt of Plaintiff is insufficient to sustain Defendants’ pleas of arson, inasmuch as there is inescapable proof of the incendiary nature of the fire and the motive and the availability on the part of Plaintiff to have accomplished this act being evident, we are of the opinion Defendants have sustained the burden of proof required of them for the defense of arson, in consequence of which Plaintiff cannot recover on such policies of insurance.
Because of our resolution of the issues on the merits, it becomes unnecessary to pass upon the pleas of prescription and false swearing asserted by Defendants.
The judgment appealed from is therefore reversed and it is now ordered that there be judgment in favor of Defendants dismissing Plaintiff’s suit at his costs.
Reversed.
ELLIS and REID, JJ., recused.